**In the United States District Court**
**for the District of Kansas**

---

Case No. 24-cv-02595-TC

---

MELISSA H.,[1]

*Plaintiff*

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,[2]

*Defendant*

---

## MEMORANDUM AND ORDER

Plaintiff Melissa H. claims that she is disabled and cannot work due to chronic obstructive pulmonary disease, a paralyzed left diaphragm, degenerative disc disease, and degenerative joint disease. She seeks review of a decision of the Commissioner of Social Security denying a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. For the following reasons, the Commissioner's final decision is affirmed.

### I

---

[1] Plaintiff is referred to only by first name and initials to protect her privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

[2] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Bisignano is substituted for any former Acting Commissioner previously named as the defendant. No further action is necessary. *See* 42 U.S.C. §§ 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner bears the burden for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses

after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Melissa H. claims she is unable to work because of chronic obstructive pulmonary disease, paralyzed left diaphragm, degenerative disc disease of the cervical and lumbar spine, and degenerative joint disease/rotator cuff tear of the left shoulder. Adm. Rec. at 24.[3] She filed her Title II application on April 19, 2021, alleging disability beginning March 8, 2021. *Id.* at 21. The agency denied the claims initially and on reconsideration on June 28, 2023. *Id.* Thereafter, Melissa H. filed a written request for a hearing and, on November 30, 2023, an administrative law judge held a telephone hearing. *Id.* On January 8, 2024, the ALJ issued a decision denying benefits. *Id.* at 30. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *Id.* at 5. Melissa H. appeals. Doc. 5 at 1.

At step one, the ALJ found that Melissa H. had not engaged in substantial gainful activity since the alleged onset date. Adm. Rec. at 23. At step two, the ALJ found that Melissa H. had the following severe impairments: "chronic obstructive pulmonary disease (COPD), paralyzed left diaphragm, degenerative disc disease of the cervical and lumbar spine, and degenerative joint disease/rotator cuff tear of the

[3] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

left shoulder." *Id.* The ALJ found several other conditions non-severe or not medically determinable. *Id.* at 23–24.

At step three, the ALJ found that Melissa H. did not have an impairment or combination of impairments that met or medically equaled a listing. Adm. Rec. at 25. The ALJ evaluated Melissa H.'s degenerative diseases, concluding that physical examinations did not show the requisite clinical findings, nor a documented medical need for a walker, cane, or other assistive device or of an inability to use one or both upper extremities to complete work-related activities. *Id.* at 25. And he evaluated Melissa H.'s respiratory disorders, concluding that the evidence did not reflect repeated hospitalizations or pulmonary testing as outlined in the relevant listing level values. *Id.* The ALJ then assessed Melissa H.'s RFC. *Id.* He found that Melissa H. could perform work, with the following limitations:

> [T]he claimant has the residual functional capacity to lift and carry 10 pounds occasionally and 10 pounds frequently. She can stand and walk for two hours and sit for six hours out of an eight-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance (as defined in the Dictionary off [sic] Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO)). She can occasionally stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to extreme cold, extreme heat, humidity, and pulmonary irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. She should avoid all unusual hazards - defined in SSR 96-9p as "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." She can occasionally reach overhead with the left upper extremity.

Adm. Rec. at 25. In reaching this determination, the ALJ "considered all symptoms" and the medical opinions and prior administrative medical findings of record. *Id.* at 26.

In formulating this RFC, the ALJ considered medical evidence, treatment records, Melissa H.'s subjective symptoms, and medical opinions. Adm. Rec. at 24. The ALJ organized his findings by Melissa

H.'s conditions of COPD and paralyzed left diaphragm and of disabling back, neck, and shoulder pain. Adm. Rec. at 27.

The ALJ first assessed Melissa H.'s symptoms related to her COPD and paralyzed left diaphragm. Melissa H. alleged "extreme limitations" related to breathing and COPD. Adm. Rec. at 26. The ALJ noted that medical evidence reflected that she had a previous history of shortness of breath and COPD, that, in November 2020, she contracted COVID-19 and had an elevated left hemi-diaphragm with pulmonary nodules, and that she continued to have symptoms related to COPD and a paralyzed left diaphragm even after she recovered from COVID. *Id.* The ALJ rejected Melissa H.'s self-reported "extreme limitations" related to these conditions because, among other contrary medical records, "her condition was classified as only Stage 2 – moderate," "pulmonary function studies during that time showed only moderately severe obstructive abnormality," "updated spirometry similarly show[ed] only mild to moderate residual obstruction," and she "demonstrated significant improvement with bronchodilators." *Id.* Finally, the ALJ noted that Melissa H.'s reported breathing issues were inconsistent with pulmonary treatment records showing that her treatment "has been limited to routine follow-up with a pulmonologist . . . once every three to six months," and "[t]here are no records of any acute episodes or exacerbations requiring inpatient admission or emergency room intervention during the relevant period." *Id.* at 26. Finally, the ALJ notes that Melissa H.'s testimony that she used her inhaler four to five times a day and her nebulizer three times a day was contradicted by treatment notes from four months earlier where Melissa H. told her pulmonologist that she "only uses albuterol [inhaler] about once per week," the pulmonologist encouraged her to use it more frequently, and Melissa H. declined the pulmonologist's offer for pulmonary rehab. *Id.* at 27.

The ALJ next assessed Melissa H.'s reported symptoms of "disabling back, neck, and shoulder pain." Adm. Rec. at 27. The ALJ noted that Melissa H. alleged "constant, debilitating pain," but imaging only showed "relatively mild degenerative changes in the cervical and lumbar spine." *Id.* Additionally, the ALJ noted that other physical examinations did not find any deficits reasonably consistent with her allegations. *Id.* The ALJ then described Melissa H.'s treatment, concluding that a lack of therapy belied her reports of extreme pain, along with Melissa H.'s statements that "the only medications she takes are over-the-counter Advil and occasional prednisone tapers." *Id.* at 27. Finally,

the ALJ cited treatment records related to Melissa H.'s alleged shoulder issues, finding that there may be some residual limitations to Melissa H.'s left shoulder, but "her lack of treatment and positive response to the steroid injection suggests that her pain is still generally well controlled." *Id.* at 28.

Then, the ALJ considered the opinion evidence. First, two state agency medical consultants, Drs. Shabnam Rehman and Carol Eades, provided opinions. Adm. Rec. at 28. Rehman opined that Melissa H. could perform a range of light exertional level work but needed "to avoid even moderate exposure to humidity and pulmonary irritants." *Id.* And Eades found that Melissa H. could perform work at all exertional levels, "but should never climb ladders, ropes, or scaffolds and would need to avoid even moderate exposure to humidity and pulmonary irritants." *Id.* The ALJ found these opinions only "partially persuasive" because Melissa H.'s MRI and pain management evidence supported a limitation to sedentary work—a greater limitation than Rehman and Eades assessed. *Id.*

Melissa H.'s primary physician, Dr. Nicholas Michalski, provided an opinion reflecting a still greater limitation. Michalski assessed that Melissa H. could not even perform sedentary work because "she could not lift even 10 pounds, stand or walk for more than one hour total, or sit for more than one hour total in an eight-hour workday." Adm. Rec. at 29. The ALJ found Michalski's opinion unpersuasive, noting that his "treatment notes [did] not document any motor or neurological deficits reasonably consistent with his conclusions," that he "provided very little explanation to support his conclusions, citing only the claimant's subjective pain and osteoarthritis in her neck and back," that his opinions were inconsistent with other evidence in the record, and, finally, that the extreme limitations he assessed were "inconsistent with the manner and frequency of the claimant's treatment and the relatively mild to moderate objective findings." *Id.*

The ALJ then proceeded to the final two steps. At step four, the ALJ found Melissa H. "capable of performing past relevant work as a data entry clerk," except for those activities precluded by Melissa H.'s RFC. Adm. Rec. at 29. At step five, relying on the testimony of a vocational expert, the ALJ found Melissa H. capable of performing past relevant work as a data entry clerk. *Id.* Accordingly, the ALJ concluded that Melissa H. was not disabled. *Id.* at 30.

## II

Melissa H. contends that there is no substantial evidence to support either the ALJ's RFC finding or the conclusion that she could perform her past work as a data entry clerk *Id.* at 26. But the record undermines that contention. Accordingly, the Commissioner's decision is affirmed.

### A

Melissa H. makes two distinct arguments in support of her general contention that the ALJ's RFC finding is not supported by substantial evidence. First, she asserts that the ALJ failed to support his finding that Melissa H.'s statements about the intensity and persistence of her symptoms were inconsistent with the record. *See* Doc. 5 at 17; Adm. Rec. at 26–27. Second, she contends that the ALJ did not comply with SSR 96-8p when assessing the opinion evidence. *See* Doc. 5 at 18–21. That argument is rejected: The ALJ adequately explained his findings and her contrary claim is an impermissible invitation to second-guess that decision.

#### 1

Melissa H. argues that the ALJ's subjective analysis as to her conditions of COPD and a paralyzed left diaphragm was flawed. Doc. 5 at 16. In particular, Melissa H. contends that the ALJ discounted her pain complaints "solely on a purported lack of objective evidence." *Id.* at 17. Pointing to SSR 16-3p, Melissa H. asserts that the ALJ erred by finding that the "severity and degree" of the symptoms she reported were "extreme" and "out of proportion" with the objective medical evidence. *Id.* (referencing Adm. Rec. at 26). Melissa H.'s assertions are incorrect.

There is a non-exhaustive list of factors an ALJ should consider when evaluating a plaintiff's subjective symptom allegations. These include "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities . . ., and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1145 (10th Cir. 2010) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004)). According to the applicable regulations, the ALJ may also consider "daily activities;" "location, duration, frequency, and intensity" of symptoms; "precipitating and aggravating factors;" and medication and other treatments used for relief. 20 C.F.R. §§ 404.1529(c)(3)(i)–

(vii), 416.929(c)(3)(i)–(vii). "The ALJ need not consider these factors in a formalistic way, but the substance must be there." *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (citation omitted). The ALJ should also consider these regulatory factors in complying with SSR 16-3p. SSR 16-3p governs how the ALJ should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016).

The ALJ complied with this standard by articulating the relevant factors SSR 16-3p requires. The ALJ explained that, although "the record does demonstrate a reasonable source for the claimant's alleged shortness of breath, the severity and degree of the limitation the claimant alleges are out of proportion with the generally mild to moderate objective findings" as well as the available treatment records. Adm. Rec. at 26–27. The decision described findings from pulmonary function studies, an updated spirometry, other physical examinations, and Melissa H.'s treatment history. *See id.* at 26. The ALJ found the objective medical evidence and Melissa H.'s treatment history inconsistent with the severity of the limitations alleged. *Id.*

Melissa H.'s objections to the ALJ's findings do not undermine them. She argues that the ALJ only considered objective medical evidence when evaluating Melissa H.'s subjective symptoms. *See* Doc. 5 at 17; Doc. 14 at 1. But the record contradicts that argument: The ALJ concluded that Melissa H.'s symptoms were inconsistent with the record based on objective medical evidence *and* treatment history suggesting that Melissa H. did not follow certain treatment recommendations. Adm. Rec. at 26–27. And although the ALJ must provide "specific reasons" that are "clearly articulated," the discussion need not provide a "formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (alterations in original); *accord Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014) (stating that courts "exercise common sense," "cannot insist on technical perfection," and will not reverse where they can "follow the adjudicator's reasoning"). The ALJ met that standard here and applied the correct legal factors. Adm. Rec. at 28.

*Littrell v. O'Malley*, No. 24-1923, 2024 WL 4403722, at *1 (8th Cir. Oct. 4, 2024), is both non-binding and inapposite. *Contra* Doc. 15 at 17. In *Littrell*, the ALJ discounted the claimant's reports of back and knee pain solely by noting the lack of objective medical evidence. *Id.* The administrative record in this case makes clear that the ALJ considered the objective medical evidence and Melissa H.'s treatment history—namely, her pulmonary treatments—in evaluating her breathing issues. Adm. Rec. at 27. And unlike the ALJ in *Littrell*, the ALJ in this case provided reasons for discrediting Melissa H.'s testimony and set forth inconsistencies he found. *See* Adm. Rec. at 26–27.

Melissa H. also takes issue with the ALJ's finding that her subjective breathing issues were not consistent with her routine treatment. *See* Doc. 5 at 17; *see also* Doc. 14 at 3; Adm. Rec. at 27. At the November 2023 hearing, Melissa H. told the ALJ that she used her inhaler four to five times per day and her nebulizer three times per day. Doc. 14 at 3; Adm. Rec. at 27. But the ALJ found that statement inconsistent with a treatment record from July 2023, which provided that Melissa H. told her pulmonologist that she "only use[s] [her] albuterol [inhaler] about once per week," the pulmonologist encouraged Melissa H. to use it more frequently, and Melissa H. declined pulmonary rehab offered by the pulmonologist. Adm. Rec. at 27. She contends that there is no discrepancy between the treatment records from July 2023 and her testimony in November 2023 because she actually increased her inhaler and nebulizer use in accordance with the pulmonologist's recommendation. Doc. 14 at 3. But the ALJ determined that Melissa H.'s breathing issues were inconsistent based on the July 2023 treatment record in conjunction with other pulmonology treatment follow-ups during the relevant period. Adm. Rec. at 26. True, choosing to weigh different parts of the evidence here might result in a different RFC. But a federal court reviewing the ALJ's determinations cannot reweigh the evidence. *Lax*, 489 F.3d at 1084; *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014); *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1182 (10th Cir. 2020). That, however, is what Melissa H. requests.

**2**

Melissa H. also argues that the physical limitations in her assessed RFC are unsupported by substantial evidence. But, again, the ALJ adequately addressed each limitation.

**a**

Melissa H. argues that SSR 96-8p required the ALJ to explain why the RFC assessment noting occasional exposure to pulmonary irritants conflicted with the opinions of two state agency medical consultants, Drs. Shabnam Rehman and Carol Eades. Doc. 5 at 18. Generally speaking, Social Security Ruling 96-8p defines how an ALJ assesses a claimant's RFC. "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). The Commissioner issued Social Security Ruling 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." 1996 WL 374184, at *1 (SSA July 2, 1996). As relevant here, the ruling requires that the RFC assessment "must always consider and address medical source opinions." *Id.* If the ALJ's RFC assessment "conflicts with a medical source opinion, the [ALJ] must explain why that opinion was not adopted." *Id.* at *7.

As previously explained, Rehman and Eades opined that Melissa H. needed "to avoid even moderate exposure to humidity and pulmonary irritants." Adm. Rec. at 28. But the ALJ found that Melissa H. could tolerate occasional exposure to pulmonary irritants. *Id.* Melissa H. contends that the RFC's "occasional exposure" statement addresses the same functional concept as Rehman and Eades's opinion but reaches the opposite conclusion without explanation. *Compare* Adm. Rec. at 25 (limiting Melissa H. to "occasional exposure to . . . pulmonary irritants"), *with id.* at 28 (recounting Rehman and Eades's opinions that Melissa H. "would need to avoid even moderate exposure to . . . pulmonary irritants").

Melissa H. has not shown an inconsistency between the ALJ's finding and Rehman and Eades's findings regarding the scale used to measure her environmental limitations. The consulting physicians provided an opinion about Melissa H.'s *level* of exposure to irritants, which is expressed in terms of none, mild, moderate, or extreme, whereas the ALJ's RFC limitation described the *frequency* of exposures, as expressed in the Dictionary of Occupational Titles, which is expressed as none, occasional, frequent, or constant. *Compare* SSR 85-15, 1985 WL 56857, at * (Jan. 1, 1985) ("Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions."), *with* SSR 96-9p,

1996 WL 362208, at *34480 (July 2, 1996) (providing that "'[o]ccasionally' means occurring from very little up to one-third of the time, and would generally total no more than 2 hours of an 8-hour workday").

Although courts within the Tenth Circuit have not yet addressed whether these two scales are compatible, other courts have concluded they cannot be compared. One district court described each scale as being measured in "term[s] of art" that describe a "different scales." *Perkins v. Comm'r of Soc. Sec.*, No. 20-554, 2021 WL 3722772, at *4 (S.D. Ohio Aug. 23, 2021). These different scales "cannot be equated." *Id.* (rejecting plaintiff's attempt to find inconsistency between an ALJ's functional limitation to "occasional exposure" and a consultant's finding regarding "moderate exposure" because equating level and frequency is like "compar[ing] apples to oranges"); *see also Bendix Autolite Corp. v. Midwesco Enterprises, Inc.,* 486 U.S. 888, 897 (1988) (Scalia, J., concurring) (noting it is impossible to balance things that are incomparable, suggesting it is akin to "judging whether a particular line is longer than a particular rock is heavy."). Other courts have reached the same incompatibility conclusion when the ALJ's hypothetical question focused on the level of exposure, but the vocational expert focused on the frequency of exposure. *See, e.g.*, *Ilioff v. Saul*, No. 19-1226, 2021 WL 848204, at *8–*9 (M.D. N.C. Mar. 5, 2021); *Glover v. Berryhill*, No. 16-5607, 2017 WL 2506411, at *8 (N.D. Ill. June 9, 2017) (same); *Sanchez v. Colvin*, No. 13-929, 2014 WL 4065091, at *17 (E.D.N.Y. Aug. 14, 2014) (holding that a limitation to avoid concentrated exposure to atmospheric conditions did not conflict with the Dictionary of Occupational Titles job description requiring frequent exposure because the first term referred to the level of exposure, whereas the second referred to the frequency of time that a condition may be present). Consequently, the ALJ's frequency limitation poses no conflict with Eades and Rehman's findings regarding Melissa H's tolerance to levels of exposure.

Even if a material inconsistency existed between the ALJ's limitation and the opinion evidence, it is harmless. As the Commissioner asserts, the ALJ determined that Melissa H. could perform her past relevant work as a data entry clerk. Doc. 9 at 11 (citing Adm. Rec. at 29). That job does not involve exposure to pulmonary irritants. *See Data Entry Clerk*, 203.582-054, 1991 WL 671700. Accordingly, even if the ALJ should have concluded that Melissa H. should avoid "even moderate exposure" to irritants, she would still be able to perform her past relevant work as a data entry clerk, rendering any error on this

pointharmless. *See Hunter v. Astrue*, 321 F. App'x 789, 793 (10th Cir. 2009) (concluding that the ALJ's erroneous RFC finding that the plaintiff could perform medium work was harmless because her past relevant work fell into the sedentary category rather than the medium work category); *see also Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (applying harmless error review to administrative proceedings).

**b**

Melissa H. also argues that the ALJ erred in assessing her RFC because the physical limitations it imposes are unsupported. Doc. 5 at 19–25. But the Administrative Record contains substantial evidence supporting the ALJ's contrary conclusion.

The ALJ evaluated the experts' opinions and found them variously persuasive. Specifically, he found Rehman and Eades's opinions partially persuasive, Adm. Rec. at 28–29, but the opinion of Melissa H.'s primary physician, Dr. Nicholas Michalski, unpersuasive, *id.* at 29. Rehman and Eades opined that Melissa H. could perform "a range of light exertional level work." *Id.* at 28. But Michalski assessed that Melissa H. "could not perform even sedentary exertional level work." *Id.* at 29. The ALJ found that Melissa H. could perform "sedentary work." *Id.* at 28.

Melissa H. argues that the ALJ did not explain how the evidence supported Melissa H.'s RFC limitations and thus failed to "connect the dots as required by SSR 96-8p." Doc. 5 at 24–25. That argument implicates SSR 96-8p, which provides that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Only after this preliminary step may the ALJ express an RFC "in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Id.*

Her argument fails because the ALJ connected the evidence to his finding that Melissa H. could perform sedentary work. *Contra* Doc. 5 at 24–25. For example, the ALJ summarized Melissa H.'s treatment history concerning Melissa H.'s alleged shoulder issues. Adm. Rec. at 27. The ALJ also assessed Melissa H.'s breathing issues, concluding that the severe limitations Melissa H. asserted were contradicted by, among other things, pulmonary function studies and updated spirometry. *Id.* at 26. These findings connected specific evidence to the medical evidence.

While Melissa H. alleges the ALJ failed to consider her testimony regarding her daily activities, the ALJ did so. Adm. Rec. at 26. The ALJ recounted "the rather extreme limitations" Melissa H. asserted relative to the pertinent medical evidence on the record. *Id.* In doing so, the ALJ is not required to equally weigh testimony regarding daily activities relative to objective evidence. *Wall v. Astrue,* 561 F.3d 1048, 1070 (10th Cir. 2009).

Melissa H. also argues that Eades and Rehman's opinions did not provide substantial evidence to support the ALJ's decision. Doc. 5 at 19–21. An ALJ must explain how the "supportability" and "consistency" of a medical opinion affects his or her determination. 20 C.F.R. § 404.1520c(b)(2). But the ALJ need not march through every finding made by each source. 20 C.F.R. § 404.1520c(b)(1). Contrary to Melissa H.'s assertions, the ALJ discussed the extent to which the experts' opinions were consistent with other record evidence. Adm. Rec. at 28. For example, the ALJ concluded that Melissa H. was more limited than Eades and Rehman assessed because of her "MRIs showing mild central spinal stenosis at L5-S1 and mild to moderate bilateral foraminal narrowing in the cervical spine, along with the claimant's participation in pain management." Adm. Rec. at 28.

That the ALJ determined that Melissa H. had greater limitations than the experts assessed is of no consequence. *Contra* Doc. 5 at 19–20 (invoking *Coleman v. Astrue*, 523 F. Supp. 2d 1264, 1275 (D. Kan. 2007)). In *Coleman*, the ALJ "did not explain what specific limitations on plaintiff's abilities he assessed, what evidence led him to decide on any particular limitations, or how he had specifically determined which medical opinions to credit," which made the ALJ's opinion "unreviewable by the court." *Coleman*, 523 F. Supp. 2d at 1275. But unlike the ALJ in *Coleman*, the ALJ in this case explained how the record evidence supported each RFC limitation concerning Melissa H. *See* Adm. Rec. at 25–29.

Relatedly, Melissa H. argues that the ALJ did not explain the supportability and consistency factors when assessing Michalski's opinion. Doc. 5 at 22. Not so. The ALJ discussed the inconsistencies between Michalski's opinion and the record evidence. Adm. Rec. at 29. For example, the ALJ rejected Michalski's opinion that Melissa H. could not lift even ten pounds because physical examinations showed a perfect score for "motor strength in all four extremities." *Id.* And the ALJ explained that Michalski's opinion that Melissa H. "cannot stand or walk for more than one hour total in an eight-hour day" was inconsistent

with exams showing that Melissa H. has a normal gait and does not require an assistive device. *Id.* Finally, the ALJ rejected Michalski's "extreme limitations" because they were "inconsistent with the manner and frequency of the claimant's treatment and the relatively mild to moderate objective findings." *Id.*

Many of Melissa H.'s objections amount to a request to reweigh the evidence. For example, she argues that the ALJ should have discredited more of Eades's and Rehman's opinions based on how the ALJ treated some of Michalski's opinions. *See* Doc. 5 at 23. That is impermissible: Federal courts cannot "reweigh[] . . . the evidence and . . . substitute [their] judgment for that of the Commissioner." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Next, Melissa H. objects to specific portions of the expert evidence. She argues that neither Eades nor Rehman attributed her limitations to "'severe' paralyzed left diaphragm, [degenerative disk disease] of the cervical spine; [degenerative disk disease] of the lumbar spine; or degenerative joint disease (DJD) and rotator cuff tear in the left shoulder." Doc. 5 at 20. This objection is not persuasive.

Contrary to Melissa H.'s assertions, there need not be a specific medical opinion for each limitation the ALJ assessed. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (concluding that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Accordingly, the Tenth Circuit has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Id.* (quoting *Howard*, 379 F.3d at 949). In other words, the fact that Eades and Rehman's opinions did not provide the basis for every limitation assessed does not undermine the ALJ's determination. Indeed, the ALJ relied on substantial evidence in the form of medical evidence, treatment records, MRIs, and other clinical examinations and findings. *See* Adm. Rec. at 25–29. That is sufficient. *See Chapo*, 682 F.3d at 1288; *accord Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (citing *Chapo* for that proposition).

Melissa H raises two other arguments that warrant only a brief mention. One is that Eades is an obstetrician who lacks qualification

to opine on Melissa H.'s physical impairments. Doc. 5 at 21. Not so. 20 C.F.R. § 404.1520c(c)(4) (noting only that a specialist's opinion "may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty"). The other is that Eades lacked a treating relationship with Melissa H. Doc. 5 at 21. That is irrelevant. *Contra* Doc. 5 at 21; *see* 20 C.F.R. § 404.1520c(b)(2).

**B**

Melissa H.'s final argument is that the ALJ improperly determined that she could conduct her past work despite her RFC limitations. Doc. 5 at 25–26. In particular, Melissa H. asserts that the ALJ should have considered whether her previous job was a composite job. *Id.*

A composite job contains significant elements of two or more jobs and thus has no equivalent within the Dictionary of Occupational Titles. *J.D.H. v. Bisignano*, No. 24-2385, 2025 WL 2467400, at *7 (D. Kan. Aug. 27, 2025); *see also id.* (citing *Speidel v. Kijakazi*, 683 F. Supp. 3d 1264, 1268 (D. Kan. 2023), which cites *Past Relevant Work (PRW) As The Claimant Performed It*, SSA Program Operations Manual System, DI 25005.020, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (last visited August 5, 2026). As a result, a claimant is only capable of performing a composite job if "she can perform all parts of the job as she previously performed it." *Id.* (quotation marks and citation omitted).

Melissa H.'s argument fails. For one thing, she has not shown that the ALJ erred in failing to consider whether her past job as a data entry clerk was a composite job. Melissa H. claims that her previous work qualifies as a composite job because she "repeatedly lift[ed] up to 50 pounds," which is a main duty of a warehouse worker. Doc. 5 at 28. But she has failed to demonstrate that lifting was a main duty for her data entry clerk position. *See* SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982) (providing that "composite jobs have significant elements of two or more occupations"); *see, e.g.*, *Wilson v. Berryhill*, 269 F. Supp. 3d 1164, 1170 (N.D. Okla. 2017) (holding that the plaintiff failed to establish that her past work was composite because she did not show that the relevant duty involved significant elements of two jobs).

And for another, her argument is unsupported. No vocational expert testified that Melissa H. performed a composite job and Melissa

H. never raised the issue of a composite job before the ALJ. Doc. 9 at 20. Accordingly, failure to raise the issue before the ALJ forecloses any claim of error. *Bisignano*, 2025 WL 2467400, at *7 (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 n.2 (10th Cir. 1993)); *accord Garcia v. Comm'r*, 817 F. App'x 640, 649 (10th Cir. 2020).

**III**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: September 2, 2026

s/ Toby Crouse
Toby Crouse
United States District Judge